**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Ross H. Schmierer, Esq.
(*Pro Hac Vice* Application Forthcoming)
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*
*Farbod Hadizadeh Moghadam*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FARBOD HADIZADEH MOGHADAM, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SET FORTH, INC., CORDOBA LEGAL GROUP PLLC, and EASY FINANCE,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C §§ 227, ET SEQ.; AND**<br>2. **VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 632, ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff HARBOD HADIZADEH MOGHADAM ("Plaintiff Moghadam" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against defendant SET FORTH, INC. ("SF"), defendant CORDOBA LEGAL GROUP PLLC ("CLG"), and defendant EASY FINANCE ("EF") (collectively referred to as "Defendants") for its violations of the

1

CLASS ACTION COMPLAINT

Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.*, ("TCPA") and the California Invasion of Privacy Act Cal. Pen. Code § 632 ("CIPA").

**INTRODUCTION**

1.      Plaintiff brings this Complaint for damages, injunctive relief, and all other available legal or equitable remedies, challenging Defendant's unlawful actions in negligently and/or willfully contacting Plaintiff and the members of the proposed Class (as defined below) (collectively, the "Class Members") on their cellular telephones, thereby invading Plaintiff's privacy.

2.      This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

3.      Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by bombarding consumers' cellular telephones with non-emergency communications and telemarketing phone calls without prior express written consent.

4.      The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

5.      Plaintiff seeks an injunction requiring Defendant to cease all unsolicited pre-recorded voice messages to non-consenting consumers, as well as an award of statutory damages and treble damages (for knowing and/or willful violations) for Plaintiff and each of the Class Members, per violation, together with court costs, and reasonable attorneys' fees.

2

CLASS ACTION COMPLAINT

6. Defendant EF also violated Cal. Pen. Code § 632.7(a) by intentionally recording confidential telephonic communications between itself and Plaintiff Moghadam without his consent.

7. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

8. Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violations.

9. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

**JURISDICTION AND VENUE**

10. Pursuant to 28 U.S.C. § 1331, this Court has federal question subject matter jurisdiction over this class action lawsuit as Plaintiff alleges violations of a federal statute.

11. The Court has supplemental subject matter jurisdiction over the additional claims in this suit, violations of the CIPA, because these claims are substantially related to and arise out of the same controversy as the original claim.

12. Personal jurisdiction is established because Defendants conduct business in the State of California. At all times relevant herein, Defendants conducted business

CLASS ACTION COMPLAINT

in the State of California, and within this judicial district.

13. Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) the conduct complained of herein occurred from this judicial district; and (2) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

14. Plaintiff Moghadam is, and at all times mentioned herein was, a citizen of the State of New York. Plaintiff Moghadam is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39) and Cal. Pen. Code § 637.2(b).

15. Upon information and belief, Defendant SF is a foreign corporation with a principal place of business located at 1900 E. Golf Rd, Ste 550, Schaumberg, IL 60173. Defendant SF is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39).

16. Upon information and belief, Defendant CLG is a foreign professional limited liability company located, organized and existing under the laws of the State of Florida.

17. Upon information and belief, Defendant Easy Finance ("EF") is domestic entity located in Beverly Hills, California that makes phone calls on behalf of Defendant Cordoba.

18. At all times relevant, Defendant conducted business in the State of California and within this judicial district.

//

CLASS ACTION COMPLAINT

## TCPA BACKGROUND

19.  In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.

20.  In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…" *Telephone Consumer Protection Act of 1991*, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

21.  The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

22.  The TCPA restricts telephone solicitations (*i.e.,* telemarketing), as well as violations of the TCPA's Do-Not-Call provision of 47 C.F.R. § 64.1200(c).

23.  In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11.

24.  Toward this end, Congress found that:

//

//

5

CLASS ACTION COMPLAINT

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

25.     As Judge Easterbrook of the Seventh Circuit explained in a TCPA case:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions.  A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

26.     In addition, 47 C.F.R. § 64.1200(a)(2) states, with respect to advertisement and telemarketing calls—of which Defendant calls to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this

CLASS ACTION COMPLAINT

section, other than a call made with the prior express written consent of the called party . . . ."

27. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

28. As of October 16, 2013, unless the recipient has given prior express written consent,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

CLASS ACTION COMPLAINT

● Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

● Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

● Prohibit autodialed calls that engage two or more lines of a multi-line business.

● Prohibit unsolicited advertising faxes.

29. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

30. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

31. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a

CLASS ACTION COMPLAINT

reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

32. The TCPA provides for damages in the amount of $500 for each negligent violation and treble damages of $1,500 for each knowing or willful violation. *See* 47 U.S.C. § 227(b)(3).

**CIPA BACKGROUND**

33. The CIPA was enacted in 1994 and aims to protect against wiretapping and eavesdropping.

34. Originally focused on safe harboring California landlines, CIPA has adapted to cover modern communications, extending to cell phones and online interactions.

35. Under CIPA, Cal. Pen. Code § 632.7 deems it unlawful to, "…without the consent of the parties to a communication, intercepts or receives and intentionally records or assists in the interception or… international recordation of, a communication transmitted between two [phones]."

9

CLASS ACTION COMPLAINT

36.    Defendant EF is, and at all times mentioned herein was, a "person," as defined by Cal. Pen. Code § 637.2(b).

37.    Defendant EF's phone calls with each Plaintiff constitute "confidential communication" per Cal. Pen. Code § 637.2(c).

38.    The California Supreme Court affirmed it is illegal to record a party to a phone call without obtaining consent from all participants. *See Smith v. LoanMe, Inc.,* 11 Cal.5th 183 (2021).

39.    The CIPA provides for damages in the amount of $5,000 per violation in addition to any actual damages. Cal. Pen. Code § 637.2(a).

### FACTUAL ALLEGATIONS

40.    Defendant SF is a for-profit corporation that sells debt servicing solutions to businesses and debt relief account administration to individual consumers.

41.    Defendant CLG is a professional limited liability company practicing law in multiple practice areas, including contract law, creditor defense, estate planning, litigation, defense, and tenant/landlord matters.

42.    Upon information and belief, Defendant EF offers debt refinancing services based in Los Angeles, California and makes call on behalf of Defendant CLG.

43.    In Defendants' overzealous attempt to market its services, Defendants' willfully or knowingly conducted (and continues to conduct) unsolicited and prerecorded telemarketing phone calls without the prior express written consent of the Plaintiff and the Class Members who were recipients of such telephone calls.

10

CLASS ACTION COMPLAINT

44. Through this conduct, Defendant has violated the TCPA and invaded the privacy of Plaintiff and the members of the Class.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF

45. At all relevant times to this Complaint, Plaintiff was assigned, and was the owner of, a cellular telephone number of ending in 2246 ("Plaintiff Moghadam's Cell Phone").

46. Plaintiff Moghadam is the sole user and/or subscriber of his Cell Phone.

47. Plaintiff Moghadam uses the Cell Phone for residential purposes.

48. On February 20, 2020, Plaintiff Moghadam, *himself*, **personally registered** his Cell Phone on the National Do Not Call Registry.

49. Plaintiff does not use his Cell Phone for any type of business purpose.

50. Plaintiff does not use his Cell Phone for business transactions.

51. Plaintiff does not use his Cell Phone for his employment.

52. Plaintiff's employer does not pay Plaintiff's phone bill.

53. Plaintiff's employer does not reimburse Plaintiff for his phone bill.

54. Defendants are required to check the National Do Not Call Registry before attempting to call under 47 U.S.C. § 227(c)(3)(F).

55. As alleged with specificity herein, however, Defendant failed to do so.

56. On or around October 12, 2023, a number ending in 1893 placed an autodialed call to Plaintiff Moghadam's Cell Phone with a pre-recorded artificial message stating:

11

CLASS ACTION COMPLAINT

"Hi this is Amber with financial support I'm just following back up with your request for getting some additional help as I got you an approval I think you're going to like just know the program is on a first come first serve basis so call me direct at 213-418-9338 and I can explain again that's 213-418-9338 talk to you soon."

57.    Plaintiff Moghadam was deeply inconvenienced by the call and engaged in calling and researching the number to determine the source of the call.

58.    Upon information and belief, the 1893 number and all other incoming numbers from Defendants are "spoof" numbers, as they were unavailable on calls and research found they were regularly reported as "scam" numbers with no legitimately known businesses associated with them.

59.    On or around October 23, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 7450 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

60.    On or around October 24, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 7420 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

61.    On or around October 26, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 1893 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

CLASS ACTION COMPLAINT

62.     On or around October 27, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 1554 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

63.     On or around November 3, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 8589 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

64.     On or around November 8, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 0115 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

65.     On or around November 29, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 0370 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

66.     On or around December 2, 2023, Plaintiff Moghadam's Phone received two back-to-back calls call from a spoof phone number ending in 0382 with each leaving a pre-recorded message that stated the exact same as the October 12, 2023 call.

67.     On or around December 15, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 0226 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

68.     On or around December 26, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 9470 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

13

CLASS ACTION COMPLAINT

69.    On or around December 28, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 0086 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

70.    On or around December 29, 2023, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 9279 with a pre-recorded message that stated the exact same as the October 12, 2023 call.

71.    On or around January 8, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 0370 with a pre-recorded message with a similar pre-recorded and artificial message to that of the October 12, 2023 call, which newly stated "Just know the program is on a first come first serve basis so please call me back at 213- 567-4916 to finalize the details if you this would help again call at 213-567-4916 and anyone of us can help you out OK thanks talk soon."

72.    On or around January 10, 2024, Plaintiff Moghadam's Phone received a call from an unknown number with a pre-recorded message that stated the exact same as the January 8, 2024 call.

73.    On or around January 13, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 4596 with a pre-recorded message that stated the exact same as the January 8, 2024 call.

74.    On or around January 16, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 1189 with a pre-recorded message that stated the exact same as the January 8, 2024 call.

14

CLASS ACTION COMPLAINT

75.    On or around January 18, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 0226 with a pre-recorded message that stated the exact same as the January 8, 2024 call.

76.    On or around January 20, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 0226 with a pre-recorded message that stated the exact same as the January 8, 2024 call.

77.    On or around February 1, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 1073 with a pre-recorded message that stated the exact same as the January 8, 2024 call.

78.    On or around February 2, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 0370 with a pre-recorded message that stated the exact same as the January 8, 2024 call.

79.    On or around February 3, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 6191 with a pre-recorded message that stated the exact same as the January 8, 2024 call.

80.    On or around March 8, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 0146 with a pre-recorded message that stated the exact same as the January 8, 2024 call.

81.    On or around March 9, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 0162 with a pre-recorded message that stated the exact same as the January 8, 2024 call.

15

CLASS ACTION COMPLAINT

82.    On or around March 11, 2024, Plaintiff Moghadam's Phone received a call from a spoof phone number ending in 6250 with a pre-recorded message that stated the exact same as the January 8, 2024 call.

83.    Due to being unable to reach the calling numbers, Plaintiff Moghadam contacted the call-back number ending in 9338 in November of 2023.

84.    During that call, Plaintiff spoke with someone who identified herself as "Amber Green" and stated she is from Defendant Easy Finance, who represented they partner with Defendant CLG to get services, and followed up with Plaintiff using an email address ending in "@easyfinanceusa.com."

85.    In or around August of 2024, Plaintiff Moghadam also contacted the 4916 call-back number and spoke to a manager named "Ray" who then sent an email from "ray@easyfinanceusa.com."

86.    Using verification technology, Plaintiff traced Ray's email address to www.setforth.com.

87.    During their conversation with Plaintiff Moghadam, neither "Amber Green" or "Ray" knew how Plaintiff's number was obtained.

88.    Further, both representatives declined to tell Plaintiff the true legal entity name of Defendant EF when asked.

89.    In total, Plaintiff Moghadam received at least 26 calls and was left 26 pre-recorded and artificial voice messages originating from or on behalf of the Defendants.

90.    Plaintiff Moghadam did not have a personal relationship with Defendant

CLASS ACTION COMPLAINT

at any point in time.

91.   Plaintiff Moghadam did not give Defendant prior express invitation or consent in writing for Defendant to call or text Plaintiff Moghadam's cellular telephone for marketing or solicitation purposes.

92.   Plaintiff Moghadam did not give Defendant prior express consent to record their private, confidential communications. Plaintiff Moghadam was never made aware the phone calls were recorded or stored.

93.   At all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

94.   Defendant did not place the calls to Plaintiff for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

95.   Each of the above unsolicited telephonic communications by Defendant and/or its agents violated 47 U.S.C. § 227(b)(1).

96.   Receiving Defendant's repeated unauthorized calls and pre-recorded voice messages drained Plaintiff's phone batteries, consumed space on Plaintiff's cell phones, and caused Plaintiff additional electric expenses and wear and tear on their phones and batteries.

97.   The cumulative effect of unsolicited messages like Defendant's poses a real risk of ultimately rendering the phones unusable for other purposes as a result of

17

CLASS ACTION COMPLAINT

the phones' memories being taken up.

98.    Plaintiff was personally affected because Plaintiff was frustrated, distressed, disturbed, and felt harassed that Defendant and/or its agents continued to direct unsolicited and unauthorized phone calls and messages to Plaintiff's cell phone.

99.    Defendant's telephonic communications forced Plaintiff to be deprived of the privacy and utility of Plaintiff's cell phone by forcing Plaintiff to ignore or reject Defendant's disruptive calls, pre-recorded voice messages, dismiss alerts, and/or silence their cell phones as a result of Defendant's incessant unsolicited telephone calls.

100.    The TCPA was intended to give individuals control over how and where they receive telephonic communications.  When Defendant placed the calls to Plaintiff without Plaintiff's consent, Defendant failed to address or respect the limitations imposed by the TCPA. In doing so, Defendant invaded Plaintiff's privacy and violated the spirit and intent behind the TCPA.

101.    Defendant's violations caused Plaintiff to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g.*, *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2)

18

CLASS ACTION COMPLAINT

intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

102. Through the aforementioned conduct, Defendant repeatedly violated the TCPA, 47 U.S.C. §§ 227, et seq., numerous times.

103. The CIPA was intended to give individuals control over how and where their confidential communications are collected and stored.

104. When Defendant recorded and saved their phone calls with Plaintiff Moghadam, Defendant failed to address or respect the limitations of the CIPA.

105. In doing so, Defendant violated Plaintiff Moghadam's privacy and the intentions of CIPA.

106. All of the unsolicited telephone calls by Defendant and/or its agents violated 47 U.S.C. § 227(b)(1).

107. Defendant's unsolicited phone messages caused Plaintiff actual harm, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

108. Defendant's phone messages also inconvenienced Plaintiff and caused disruption to Plaintiff's daily lives.

109. Defendant's unsolicited phone messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that Plaintiff spent numerous hours investigating the unwanted phone messages including how they obtained Plaintiff's numbers and who

CLASS ACTION COMPLAINT

the Defendant was.

110.   Through the above-alleged conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA and CIPA.

## STANDING

### *The "Injury in Fact" Prong*

111.   Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

112.   For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendants made numerous unsolicited telephone calls to Plaintiff's cellular telephone, including calls utilizing an artificial or pre-recorded voice messages. Such phone calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

113.   For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543.

114.   Defendant invaded Plaintiff's privacy and peace by directing unsolicited telephone calls, including calls utilizing an artificial or pre-recorded voice, to Plaintiffs' cellular telephone.

20

CLASS ACTION COMPLAINT

115. Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time to see who was calling, ignoring calls, and listening to Defendant's pre-recorded voice messages which consumed space in the voicemail box on Plaintiff's cell phone.

116. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

117. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that Plaintiff's injuries are traceable to the conduct of Defendant.

118. The above-mentioned unsolicited phone calls were directly and explicitly linked to Defendant.

119. Defendant's calls identified the Defendant as "Easy Finance" who represented they work for "Cordoba Law Group", and on information and belief, at least one agent was actually working for Set Forth, Inc.

120. These unsolicited telephone calls and pre-recorded voice messages are the source of Plaintiff's and the Class Members' injuries and directly traceable to Defendant.

121. Thus, Plaintiff has illustrated facts that show that his injuries are traceable to the conduct of Defendant.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

21

CLASS ACTION COMPLAINT

122.   The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

123.   Plaintiff's Request for Relief includes a request for injunctive relief and statutory damages for each phone call made by Defendant to cellular numbers who did not previously consent to receive calls and pre-recorded voice communications to their cellular phones from Defendant, as authorized by statute in 47 U.S.C. § 227.

124.   The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiff and the putative Class Members.

125.   Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

### CLASS ACTION ALLEGATIONS

Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Classes, which are defined as follows:

Prerecorded Voice Class

All persons within the United States who received any telephone call(s) from Defendant or its agent(s) to said person's cellular telephone made through the use of an artificial or prerecorded voice within the four years prior to the filling of the Complaint.

CLASS ACTION COMPLAINT

<u>DNC Class</u>

All persons within the United States (1) registered on the National Do Not Call Registry for at least 31 days, (2) who received more than one telephone solicitation (3) made by or on behalf of Defendant, (4) for the purpose of promoting Defendant's goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint

<u>CIPA Class</u>

All California residents, who, at any time during the applicable limitations period, including any period tolled preceding the filing of this complaint through the date of resolution, were called by, and participated in, one or more cellular telephone conversations with representatives of Defendant or its agents, on a cellular telephone.

126.   Excluded from both Classes are Defendant, its officers and directors, members of its immediate families and its legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

127.   Plaintiff reserves the right to redefine the Classes and to add subclasses as appropriate based on discovery and specific theories of liability.

128.   Further, Plaintiff and members of the Classes were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class Members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class Members who opted out from any communication from Defendant, thereby causing annoyance to Plaintiff and the Class and also invading the privacy of Plaintiff and the Classes.  Plaintiff and the Class

23

CLASS ACTION COMPLAINT

Members were damaged thereby.

129. <u>Numerosity</u>: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized pre-recorded voice calls made to numerous telephone numbers. Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Classes are so numerous that joinder of all members of the Classes are impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

130. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's phone call logs and call records.

131. Members of the Classes may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

132. <u>Ascertainability</u>: The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria. In addition, the members of the Classes are identifiable in that, upon information and belief, their cellular telephone

24

CLASS ACTION COMPLAINT

numbers, names and addresses can be identified in business records maintained by Defendant and/or by third parties.

133.   Typicality: As a person who received numerous telephone solicitations from Defendants within a 12-month period, who did not have an established business relationship or personal relationship with Defendants, and who did not provide Defendants prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Classes.  Plaintiff will fairly and adequately represent and protect the interests of the Classes in that Plaintiff has no interests antagonistic to any member of the Classes.

134.   Plaintiff and members of the Classes each received at least one telephonic sales call, advertising Defendant's services, without prior express written consent, which Defendant made or caused to be made to Plaintiff and the members of the Classes.

135.   Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff has had to suffer the burden and invasion of privacy of receiving unsolicited phone calls to Plaintiff's cellular telephone from Defendant while Defendant had no express written consent to contact Plaintiff. Thus, Plaintiff's injuries are typical to Class Members.

136.   Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice and procedure on the part of Defendant.

137.   Plaintiff's claims are based on the same theories, as are the claims of the

25

CLASS ACTION COMPLAINT

members of the Classes.

138.    Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally placing unsolicited calls, including calls utilizing artificial or prerecorded voice messages, to their cellular phones without prior express consent. Plaintiff and the Class Members suffered injuries, including invasion of privacy, and were damaged thereby.

139.    Adequacy: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the Classes with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes. Plaintiff will vigorously pursue the claims of the members of the Classes. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed Class Counsel, are well-versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the TCPA, CIPA and FTSA. Plaintiff's counsel will assert, protect and otherwise represent the members of the Class. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

CLASS ACTION COMPLAINT

140. Predominance: The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

141. Commonality: There are common questions of law and fact as to all members of the Classes, including but not limited to the following:

- What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing phone calls;

- Whether Defendant initiated unsolicited phone calls, including calls utilizing an artificial or pre-recorded voice, to Plaintiff and Class members;

- How Defendant obtained the numbers of Plaintiff and Class members;

- Whether Defendant can meet its burden of showing that it had prior express written consent to conduct such phone calls;

- Whether Defendant willfully or knowingly violated the FTSA and its regulations;

- Whether Defendant willfully or knowingly violated the TCPA;

- Whether Defendant willfully or knowingly violated the CIPA;

- Whether Plaintiff and the Class members were damaged thereby,

27

CLASS ACTION COMPLAINT

and the extent of damages for such violation; and

- Whether Plaintiff and the members of the Classes are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

- Whether Plaintiff and members of the Classes are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

- Whether Plaintiff and the Classes are entitled to any other relief.

99.    Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

- The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

- The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

CLASS ACTION COMPLAINT

- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

- The damages suffered by each individual member of the Classes may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

- The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

- There will be little difficulty in the management of this action as a class action.

100. Class-Wide Injunctive Relief: Moreover, class certification is warranted because Defendant has acted on grounds generally applicable to Plaintiff and members of Classes, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and

CLASS ACTION COMPLAINT

prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA of statutory damages and to be free from unwanted phone calls.

101.   Defendant has acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

102.   Plaintiff and the members of the Classes have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Classes will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of herein.

103.   A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendant to comply with applicable law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

104.   Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

30

CLASS ACTION COMPLAINT

105. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. §§ 227, ET SEQ.**
**[ON BEHALF OF PLAINTIFF AND THE PRE-RECORDED VOICE CLASS]**

106. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

107. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, et seq.

108. Defendants and/or their agents placed at several unauthorized calls to Plaintiff's cellular telephones using an artificial and/or prerecorded voice without Plaintiff's prior express consent.

109. As a result of Defendants' conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations.

110. As a result of Defendants' violations of the TCPA, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendants violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

111. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Pre-Recorded Voice Class.

CLASS ACTION COMPLAINT

## COUNT II
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §§ 227, ET SEQ.
### [ON BEHALF OF PLAINTIFF AND THE DNC CLASS]

112. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

113. Defendants' and/ or its agents placed unsolicited phone calls to Plaintiff and the other members of the Class.

114. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

(A) An action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) An action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) Both such actions.

115. Defendants' – or third parties directed by Defendants dialed numbers to make non-emergency telephone calls to the telephones of Plaintiff and the Class.

116. Defendants' conduct was negligent, willful, or knowing.

117. Defendants' knew or should have known that it did not have prior express

CLASS ACTION COMPLAINT

written consent to conduct these phone calls in violation of the TCPA.

118.   Defendants' negligently, willfully, and/or knowingly allowed unsolicited phone calls to be made to Plaintiff and Class members. For instance, Defendant could have determined from a review of its own business records that it did not have the required prior express written consent to contact Plaintiff and/or Class members in such a manner yet disregarded such information and made the illegal and unwanted phone calls to Plaintiff and the Class.

119.   The foregoing acts and omissions of Defendants' constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*

120.   Defendants' have, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendants' violations, Plaintiff and each of the Class Members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and an award of $1,500.00 in statutory damages for each and every willing or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

121.   As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the Class, are entitled to damages in an amount to be proven at trial.

122.   Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

CLASS ACTION COMPLAINT

## COUNT III
### VIOLATIONS OF THE CIPA, CAL. PEN. CODE § 632
### [ON BEHALF OF PLAINTIFF AND THE CIPA CLASS]
### [AS TO DEFENDANT EASY FINANCE ONLY]

123. Plaintiff Moghadam re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

124. Defendant – or third parties direct by Defendant – used equipment with the capacity to record and store a confidential communication without the consent of a party. This use of recording technology not only reflects a disregard for legal requirements but also an intentional breach of privacy norms established by law.

125. Defendant's conduct directly violates the purpose and intention of California's privacy laws, which are designed to protect individuals from unauthorized recordings of their private communications. As a business operating in California and engaging in telemarketing, Defendant is presumed to have superior knowledge and understanding of California's two- party consent laws, including Cal. Pen. Code § 632 and § 632.7.

126. By knowingly recording Plaintiff Moghadam's communications without consent, Defendant's conduct undermines the principles of California's privacy statutes, which aim to safeguard personal privacy and ensure that all parties to a conversation have control over whether their communications are recorded. This disregard for statutory requirements not only harms Plaintiff but reflects Defendant's broader pattern of non-compliance.

CLASS ACTION COMPLAINT

127.    As a result of Defendant's violations of the CIPA, Plaintiff Moghadam is entitled to damages in the amount of $5,000 per violation in addition to any actual damages the court deems necessary. Cal. Pen. Code § 637.2(a).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully requests the following relief against Defendants:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel;

- Injunctive relief prohibiting Defendants from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

- Statutory damages of $500.00 for Plaintiff and each member the Pre-Recorded Voice Class for each and every one of Defendants' violations of 47 U.S.C. §§ 227, et seq.;

- Statutory damages of $500.00 for Plaintiff and each member the DNC Class for each and every one of Defendants' violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(B);

- Statutory damages of $1,500.00 for Plaintiff and each member of the Pre-Recorded Voice Class for each and every one of Defendants' willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(C);

CLASS ACTION COMPLAINT

- Statutory damages of $1,500.00 for Plaintiff and each member of the DNC Class for each and every one of Defendants' willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(C);

- Statutory damages of $5,000 for Plaintiff Moghadam for each and every one of Defendant's willful and knowing violations of Cal. Pen. Code § 632;

- A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 and Florida Statute § 501.059;

- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

- Pre-judgment and post-judgment interest on monetary relief; and

- All other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Classes, demands a jury trial on all issues so triable.

Dated: April 16, 2026                    Respectfully submitted,

                                         **KAZEROUNI LAW GROUP, APC**


                                         By:   _/s/ David J. McGlothlin_
                                               Abbas Kazerounian, Esq.
                                               David J. McGlothlin, Esq.
                                               245 Fischer Ave., Unit D1

36

CLASS ACTION COMPLAINT

Costa Mesa, CA 92626
Phone: (800) 400-6808
Fax: (800) 520-5523

Ross Schmierer, Esq.
(*Pro Hac Vice* Application Pending)
3000 Atrium Way, Suite 200
Mount Laurel, New Jersey 08054
Phone: (732) 588-8688
Fax: (800) 520-5523
*Attorneys for Plaintiff*

37

CLASS ACTION COMPLAINT